Hear ye, hear ye, hear ye. The United States Court of Appeals for the Fifth Circuit is now open according to law. God save the United States and this honorable court. Thank you. Good afternoon. Our case, our first case for today is 2020-30093 St. Charles Surgical Hospital v. Louisiana Health Service and Indemnity Company et al. Mr. Feinberg, you may proceed with your argument, sir. Thank you and good afternoon. May it please the court, Adam Feinberg on behalf of the appellants, which I refer to collectively as Blue Cross. There are two primary issues in this case brought by two different medical providers against Blue Cross for fraud and abuse of rights in connection with Blue Cross's process of pre-authorizing or pre-certifying treatment for certain patients who are enrolled in a FEBA-governed plan called the Service Benefit Plan, which was created by a federal government contract between Blue Cross and the United States Office of Personnel Management. The first issue is whether the federal officer removal statutes acting under and connection prongs have been met. There's no dispute here that the other two prongs for federal officer removal have been met, that is that Blue Cross is a person and that it has colorable federal defenses. Neither of those was contested either in this court or in the district court. The second question is whether and if so when the appellees put into issue in this case patients who were in fact covered or enrolled in the Service Benefit Plan. I was planning to take those issues in that order unless the court prefers something different. Well, does the first issue, I mean the second issue, if there are no patients that are in that plan, how does that affect the whole case? It would seem like they might go in the other order. I'm happy to do it that way, Your Honor, and I agree, Judge Elrod, you're exactly right. If none of the patients at issue here are enrolled in this plan, there's really no dispute about anything. So let me flip the order and start with that first because I think it's quite clear that there are enrollees in this plan at issue. And the key to that is this listing of patients that were at issue that was produced by the appellees on October 31st, 2019. And let me give you a little bit of background about how this works. Because of privacy concerns, the patients at issue are normally not included in the complaint. And it's quite common practice for a provider who sues in cases like this to give a list informally to the other side, to the defendant, saying these are the claims we say are at issue. And that's what happened here. There are no patients identified, what plans are And that was not identified for Blue Cross until this October 31st, 2019 listing. And that's the critical event in this case. By the way, the same exact thing happened in the St. Charles case that this court decided last year involving some of the same parties and a lot of the same counsel. So I think both parties know exactly how this goes. And on this listing of claims that Blue Cross first received on October 31st, 2019, are a number that are enrolled in this plan. And it is unambiguous because each such enrollee has an ID number that starts with an R. That's a unique identifier that is specific to this plan. That information, by the way, is publicly known because it's on the internet and also has been established in other cases involving these exact parties. So appellees know full well that a number that starts with an R is in somebody who's enrolled in this plan. If that weren't clear enough, their own list labels all of these individuals as enrolled in the quote BCBS federal plan. So I don't think there's any dispute about that. Blue Cross has pointed this fact out repeatedly that the list of claims received on October 31st, 2019 included these enrollees. That's in the notice of removal, for example, at ROA 12 and 13 and 25 and 26 in their remand opposition. That is Blue Cross's remand opposition at 657 and 662 of the record. And even in the oral argument on the remand motion, Blue Cross made this point that this list contains enrollees in this plan. And that can be found at 1114 of the record. Counsel, how does the list? I'm sorry, you go ahead, Judge Wilson. Well, I'm sorry, Judge Elrod. I was just going to ask how the list that lists these patients squares with the disclaimers that are expressly pled in the complaint because they say they're not seeking any relief under the federal plan. And my understanding is I've got it right is once these were disclosed on this list that the plaintiff said that the disclosure was inadvertent and it didn't change which claims they were asserting. So how do we scare that? Well, I think there are two issues, Judge Wilson, in that question. Let me start first with the inadvertent production issue because that I think is undisputably not true. These individuals that were disclosed on this list, the notion that they were inadvertently disclosed has never been made before other than in this court. This issue came up over and over, as I just mentioned, in the district court. And not once did the appellees ever say, oh, sorry, we didn't mean to include these people or take any action to clarify that they didn't mean to include these people in fact, I'm confused. Are you saying when you said that's untrue? I mean, you didn't say that. That's that's that's not accurate. That's a mistake. Are you saying that they're lying to us? I don't really understand what your position is on that. Well, well, I guess because it's all over the brief. I mean, sorry, it's all over the brief. It says they are no federal employees in this lawsuit. So that's it. So why would you say that it's not accurate that it was a mistake? Well, I think your honor is pretty clear because the list has these people in them and appellees made no effort ever to take these people off the list. And just just to put a finer point on it, your honors, you can go back and look at what happened in these other recent cases. So, for example, in the St. Charles case that this court decided just last just this last year, which is case number 18-30957, page nine of the record of appeal in that case is a complete explanation of what these ID numbers mean, including the fact that our number is a number specifically for enrollees of this plan. You can find the same document in the District of Louisiana case at ECF number one, page four. The case there is 18-CV-1861. Do you agree that the removal is inappropriate if there are no federal employees in this lawsuit? Well, when you say no federal employees, you mean none of the misrepresentations that took place involve these federal involve any patients who are enrolled in this plan? Correct. Yes, I would agree. You agree that we did you lose the appeal if that is the case, right? Yes, your honor. Okay. And back to my earlier point, how so I'll give you the list that was disclosed in discovery and the list as these covered individuals on there. But the complaint itself expressly pleads that they're not seeking damages for any federally insured patient. They're not seeking relief under the FDHC. So so how do we square the list in discovery with what they say in the complaint? I mean, does it matter that they disclose people on this list if they're not going to seek any damages or assert any claims with regard to them? Well, I think it does. And for two different reasons, Judge Wilson, first, the the the list is the operative document here. A complaint can be amended or in this case, a petition can be amended at any time. The rules as we all under the federal rules of civil procedure 15 B are quite liberal in that regard. And the rules in Louisiana, this is Louisiana Code of Civil Procedure. Article 1154 is almost identical to Rule 54. I'm sorry to rule federal Rule 15 B and allows amendment of pleadings during and even after trial, even over the objection of the defendant. And so there's no guarantees that these people aren't going to be. That is to say, enrollees in this plane aren't going to be inserted into this case. And there's no guarantee they could ever give us. And once they gave us that list that unambiguously said there are enrollees in this planet issue, we were entitled to remove. Well, once it's clarified that there aren't any and that they aren't going to bring any, why isn't the district court entitled to remand and us to affirm that? Because, you know, you know how, for example, even on like whether or not the claim is the right amount. Once a plaintiff stipulates that they're not going to seek the wrong, the higher amount, that's good enough. So why don't we take the plaintiff at their word, especially when their word is in their sworn complaint? Well, I think there are two reasons for that, Judge Elrod. First of all, removal jurisdiction is determined at the moment the case was removed. And so once they put instances where we allow people to say, Oh, we're not really pleading higher than that. We let people there are all kinds of ways. We let people come in and clarify these things. Well, I think it's the district court might have discretion to do that. But the appellees never asked for that in the district court. They never said, Oh, no, we don't mean to be putting these people at issue. In fact, they took the exact opposite approach. They said the removal was untimely because Blue Cross, you knew that these federal employees were at issue all along because you raised this as a defense over and over. And so they can't have it both ways that they they've intended all along that these federal employees be at issue. And of course, this does raise the issue of timeliness. And as we pointed out in the briefs, we had a suspicion all along that federal employees were were at issue. But that wasn't confirmed such that we could ascertain that fact until the list was actually provided. Okay, maybe you should go to your first point. And can you deal with the fact that St. Charles has where the OPM matters? Because that's the policy that's directing the action, whereas this case doesn't have that situation? Well, yes. And so I think the short answer to that, Judge Elrod, is that there's no longer any requirement under either the acting under or the connection prong that OPM direct the conduct that arguably didn't even exist before Latiole. But this court's en banc decision in Latiole, I think, makes unbelievably clear that the government doesn't have to have directed the conduct that issue under any part of the test. And I think so. What about what about what? They're alleging fraud here, correct? Misrepresentations, things that I guess you could say were like ultra virus actions if they're true, if Blue Cross did what is alleged. So are you saying that even ultra virus acts like for all those kinds of things fall within the prongs of the federal officer removal test? Yeah, absolutely, Your Honor. Because Blue Cross Blue Shield can do whatever it wants to do, and it's still shielded by this removal provision as a federal officer. Well, Your Honor, I think obviously Blue Cross disputes that, and that's a key point. And this has come up in the cases repeatedly. This was an issue in the Willingham case that the Supreme Court decided many decades ago, as well as the Bennett case that the Sixth Both of those cases specifically talk about, even if you were acting outside of what you were supposed to be doing, as long as you were doing it while you were performing your federal work, that's sufficient to remove under the federal officer removal statute, because the defendant will then be entitled to say, No, I didn't really do that, or I have a good excuse for doing that. And they're entitled to do that in federal court. And is that the new connection language? Which prong is that? Well, technically, I believe that's under the connection prong. Okay. The district court didn't reach that. I mean, the district court said that it was not reaching the causal nexus test as it was before we handed down the superseding opinion. So do we need to send it back so the district court needs to do further analysis there? Well, that's a possibility, Your Honor. But I think the district court actually did analyze it, because the district court's entire rationale was OPM didn't direct the Blue Cross to take these particular allegedly fraudulent actions. And that, although the district court analyzed that under the acting under prong, that's really part of the connection prong. That's exactly what happened in all of these other cases. And all of the courts analyzed that as being part of what is now the connection prong. So I don't think the cross blue shield be determined to be acting under OPM. But given the allegations of fraud and again, ultra virus conduct, could that conduct not be in connection with its role as a federal officer? Well, that is theoretically possible. But the fact that it's a fraud allegation or potential ultra virus action is not relevant to the test. The only part that's relevant is, is the alleged conduct in this case fraud related in not causally related, but just associated with the federal work. And in this case, that's undoubtedly true, because A, they were Blue Cross was administering a federal program. B, it was carrying out this federally mandated pre approval process, which is in the plan documents. It's in the statement of benefits starting at page 21 that we cite. And this was explained in the Eastern District of Louisiana's 2002 transitional hospitals case. These pre approval processes are dictated by OPM, the court says. And third, there is this issue of assignments. And granted, they're not suing on assignment. But the appellees here do say part of the conduct was not honoring assignments and paying the patients directly when they wanted the payments to go to them. But this court in St. Charles specifically says we don't have to do that. That that that that that conduct is specifically addressed by OPM. Well, thank you. Thank you, Mr. Feinberg. You save time for rebuttal. Thank you, Mr. Woodward. Woodruff, however, you may proceed. But I do want you to answer the question if you if a different strategy was pursued in the district court. And so this is now and if this is a new strategy that that employees are not involved. May it please the court. Good morning or good afternoon, Your Honors. Walter Woodruff on behalf of the appellees. I'll start with the disposition or this appeal is easily disposed of on my opponent's concession. If it does not involve federal employees, he said remand was proper and this appeal should be dismissed or the district court should be affirmed. And I agree with that. For him to say that we made no concession or clarification is hard to believe. If you read the third amended petition and every iteration of the petition that came for it. It really leaves no doubt in the reader's mind what we're waiting. We terms as possible. We've not changed this case. In fact, I would submit now, given this briefing and the positions that we've taken, we would be judicially a stopped from going into state court and arguing or seeking to recover any benefits on behalf of a federal employee. What a point that this new list was. It couldn't have been inadvertent because of the policy numbers, the way they started, the way they were described. And so so what of that argument that this had to be intentional? And what of the argument that somehow superseded the allegations in the complaint or the disclaimers in the complaint? First, Judge Wilson, under Louisiana Code of Civil Procedure, we have very liberal discovery rules in the state which said that a document can be produced or has to be produced. Not it doesn't have to be admissible. It just needs to if it's reasonably calculated to lead to the discovery of admissible evidence, it should be turned over. We complied with that. We were comfortable doing that because we wanted to disclose as much information as we had. And we made that disclosure after we had already made these disclaimers, waivers and renunciations. That's number one. Number two, I disagree with my opponent. I don't think discovery in any way transmogrifies or amends a complaint. Our complaint has been consistent. We did add additional facts. But the thing to keep in mind here is this is a our theory of our case is fraud. That's it. Fraud and abusive rights. We are seeking to vindicate rights that belong to my clients, not any insured. There are no federal employees in this case. We're not challenging anything about precertification. OPM has no oversight in a case where there's no federal employee involved. And I think my client or my opponent is conflating the old test with the new test. I mean, Latchley was clear. Latchley set forth four prongs that now have to be met. And I'll quote directly from the opinion. Henceforth, to remove under Section 1442A, a defendant must show one, it is asserted a colorable defense. Two, it is a person within the meaning of the statute. Three, that it is acted pursuant to a federal officer's direction. And number four, the charge conduct is connected or associated with an act pursuant to a federal officer's direction. So while the office, federal officer does not have to dictate the challenged action, he does have to direct it. There's no direction here. OPM has not directed anything in the claims for which we seek recovery. And, you know, if the concession is that if there are no federal employees that we win, and we have conceded all over the place that there are no federal employees, I think that solves this appeal. Where did you concede it after this list was produced in discovery? In briefing to this court and in briefing to the district court. Could we find some briefing in the district court where you conceded this, that you were not seeking federal employees or that you just didn't involve federal employees? Sure. Can I do a letter to the court and supplement? That would be fine. And Miss, you please do that within three business days and Mr. Feinberg, you may file a 28 J response as well. In three days there. Within how many days should I file it? Business days. So if today is today, Thursday. Mr. Woodruff, could you respond to the question? I think Judge Wilson asked your opponent about whether remand is appropriate here in order for the district court to really dig into the new fourth prong of Latty Allay and really get it. I mean, is that the right disposition here? I don't think so, Judge Duncan. I think the judge in the district court decided this case on the third prong that no action that we challenge here was dictated by a federal officer. Again, these are rights that we seek to vindicate that belong exclusively to my clients. Imagine though that we found, well, that, you know, this was, this was before Latty Allay, as I recall, right? Yeah. And so suppose we found, well, you know, the third prong here, I mean, imagine we don't agree with you on the third prong. But we do think that the fourth prong, you know, is an open question. I mean, that it hasn't really been analyzed. The district court said, I'm going to stay away from that. So what if, what if that were our view? Yeah. Would, would, could, could we decide the fourth prong and, you know, figure out whether, whether it's, it's implicated here or do we need to send that back to the district court? Well, if I imagine that you disagree on the third prong, I suppose remand would be appropriate, but the test in Latty Allay is conjunctive, which means all four prongs need to be present. And I think the district court stopped at the third prong because it was so clear, Your Honor, that nothing we challenged was to, no activity we challenged was taken at the direction of a federal officer. But if the court is inclined to disagree with me and the district court on that, remand would be a welcome disposition. Okay. Thank you. Mr. Woodruff, there's some argument in the reply brief that transitional hospitals is not good law after our en banc case. Would you like to address that? I think that my opponent is, is making much of the fact that Latty Allay says that in a lot of cases say that federal officer doesn't have to dictate the action that's taken. And I agree with that as a general concept and precept. We're not saying that's wrong. What we're saying is, is that even under Latty Allay, this en banc court still said that there has to be some connective material, that the action that's challenged has to be taken at the direction of, it doesn't need to be dictated by, but has to be taken at the direction of. And I think transitional may have used the word dictate in it, but I don't think that upsets or overturns that court's disposition or its precedential value. Do you have anything further, Mr. Woodruff? I do not, unless the court has anything to ask me. Judge Duncan, Judge Wilson, any further questions? None here. Thank you, Mr. Woodruff. Mr. Feinberg, you have saved time for rebuttal. We knew that had to happen at some point. I apologize, Your Honors, and thank you. I just want to make a couple points. First of all, on this issue of Judge Wilson, your notion of a frolic, you know, an ultraviolet action by Blue Cross, which obviously relates to this fourth element that we were just talking about. I just want to note a passage from the Supreme Court's Willingham v. Morgan decision. This is at page 409 of the decision. It says, it is enough that petitioners act or their presence at the place in the performance of their official duties constitutes the basis, though mistaken or false, of the state prosecution. In this case, once petitioners had shown that their only contact, only contact with the respondent occurred inside the penitentiary while they were performing their duties, we believe they had demonstrated the required causal connection. The connection consists, simply enough, of the undisputed fact that the petitioners were on duty at their place of federal employment at all relevant times. If the question raised is whether they were engaged in some kind of frolic of their own in relation to respondent, they should have the opportunity to present their version of the facts to a federal, not a state court. And that is exactly the situation that we have here. And Ladiolet, I think, makes this point really clear. In Ladiolet, and following all of these other decisions by this court, Bartel, Legendre, Savoy, and Zerang, the law at that time was, well, if the conduct was you used asbestos, you can remove because the Navy told you to use asbestos. But if the conduct was you didn't do enough to protect the workers from asbestos, or you didn't do enough to warn them, the Navy didn't say anything about that. And so the courts consistently said you cannot remove that. But Ladiolet changed that. In fact, that's exactly what happened in Ladiolet. There was no allegation about the use of asbestos. It was only a failure to warn and failure to provide enough protection. And the court said, even though there's no direction specifically as to those safety measures, that it could be removed because that conduct took place during the federal work. And so that's all that's required. It's a very, very easy test to meet, particularly after Ladiolet. The action here just has to be connected or associated with the federal work. And that's exactly what we have here for the reasons already stated. Is there any distinction because Ladiolet was negligent, correct? Not sort of an intentional act like what is alleged here. Is there a distinction that matters there? No, I don't think so. And a lot of the federal officer removal cases involve purposeful conduct. There's an old case called Davis versus South Carolina that's discussed in the Supreme Court's Watson decision where the charge was murder because the federal, the person, the private person acting under the federal employee allegedly shot someone. And there was no, there's obviously no direction that you should shoot the person. But that case was held by the Supreme Court many years ago to be removable in the Supreme Court in the last 12 years or so in cited that as a typical example of the proper use of the federal officer removal statutes. And I want to return though to the issue of the list and the waivers. It's worth looking very carefully at these waivers. And even the way Mr. Woodruff explained them today, we are not, we understand that they're not seeking benefits. But that's not the issue here. The issue is are any of the people involved, that is, are any of the patients members of this federal plan? And as I said, the record is unbelievably clear that they are. And it would have been very easy for appellees to say, no, no, we didn't put them on the list, but they never ever made that point in the district court. As I said before, they did the exact opposite. They said, you knew federal employees were involved. And so you raise that as an affirmative defense. And so your removal now is untimely. So it just makes no sense. One other point along those lines, appellees in this case, in this appeal and in the district court did not challenge our federal defenses. Those are preemption under FEBA and sovereign immunity because the government pays the benefits. That can't possibly be valid defenses unless the federal employees are at issue. Thank you. Thank you. Thank you very much. This case, we appreciate the arguments on both sides and appreciate your hearing in this virtual format and the case is submitted. Thank you. Thank you.